Certainly, Your Honor. Brad Seligman for Plaintiffs. This case does come to this Court in a somewhat different procedural posture than most Wage and Hour cases. There are certain facts and procedural decisions below which I think are critical. The first is unlike a lot of these cases that are filed by current employees and they sought class-wide adjunctive relief. The case was never prosecuted as solely a damage action. I think that's a critical distinction. The second is the Court in this case made a specific finding that all of the Rule 23a requirements, including commonality and typicality, were met. In fact, it found the major legal issues and some of the factual issues are the same. Third, this is moving on to Rule 23b-2, the Court specifically found, and this is very rare to see in these cases, that the defendant, in fact, acted on grounds that apply generally to the class in that it made an across-the-board exempt classification decision without conducting any study of the jobs in question. And then finally, and I think in many ways the most critical finding of all, the Court went on and said that a principal issue of law in the case was whether, was which assistant manager duties were properly treated as exempt and which were not. And the Court answered that question by saying that that can be answered uniformly for all assistant managers based on a finite list of tasks that assistant managers actually did or were expected to perform. A class action is likely the most efficient means of answering this question. Now, those are the factual determinations the Court made. Faced with the B-2, which is the first issue I want to address, certification, the Court rejected B-2 certification on two specific reasons, not a whole range of reasons that the defendants raised in their brief, but the Court was quite explicit about the reasons. It said because of turnover of workers and because of complexity of damage determinations, despite the fact that all the Rule 23a requirements are there, and the defendant acted for the class at all. So isn't whether those two determinations a reason not to certify the class dependent on Dukes v. Wal-Mart? Well, it's dependent, I think, on Molsky. Molsky v. Glide, the earlier case. Well, which depended on Dukes. Dukes certainly supports Glide on Molsky. I guess the question I have is to the extent that there are, I guess, en banc proceedings going on with respect to Duke, wouldn't we have to wait to resolve whether those were valid grounds in this case until we know what ultimately Dukes is going to decide? Well, I think while I think Dukes, it would be helpful, I don't think we need to rely on Dukes to resolve this case, because I think the Dukes case presented some additional issues that weren't present in this case. In the Dukes case, for example. Right. Because the problem is if the case goes en banc, who knows? It's still a petition for rehearing pending, and it's not final. It certainly is. Right. So the mandate hasn't issued. That's correct. And if it goes to an en banc court, then the court could undo, you know, I'm not saying it would, you know, I'm not saying, but it's a possibility that it could undo itself and Molsky to a certain extent. Well, that is, I can't deny that that's a theoretical possibility going forward. I think the principal arguments, Wal-Mart, although Wal-Mart does raise a challenge to Molsky, the principal arguments really have to do with issues that aren't present here, whether you can use a formula or statistical analysis of damages, and whether punitive damages are properly dealt with in that kind of a formula, which are, and the due process arguments that Wal-Mart is making are the principal arguments that are there. Now, the Molsky case has been affirmed by this Court in Dukes, but it was in Molsky. The Ninth Circuit in its history, I think, is very consistent on that. It seems extremely unlikely that that particular holding is going to be reversed by this Court. But even if it were, we're still left, I think, with the specific findings that were made in this case. Even under the position that Molsky rejected, which is the Fifth Circuit Allison decision, certification would have been appropriate here. The Allison court said class certification was not appropriate under B-2 where damages that involve subjective determinations were sought. It specifically held that B-2 certification is appropriate where what you're looking for is lost back pay. And it had to make the distinction because it was an unbroken line of cases going back for decades holding that B-2 certification in a Title VII case that sought injunctive relief and lost back pay was sufficient. So even ANCAP, excuse me, excuse me, even the Allison case doesn't reject it. And I think the subsequent case in the Fifth Circuit, Monumental Life, is the icing on the cake. And Monumental Life, which was a case in which the Court was looking at discriminatory insurance policies, the Court said that where the, what was primarily being sought here was injunctive relief and economic losses that could be calculated. And in that case, they lost policy charges for insurance policies, that that could be certified under B-2, even where a significant portion of the class no longer was in a position to enjoy injunctive relief because they no longer had policies. So I think that even if the Ninth Circuit were to adopt Allison, it doesn't, I would say our argument remains extremely strong here, specifically because of the findings that the Court made below. There's no question in this case that plaintiffs sought class-wide injunctive relief, and despite the protestations of the defendant here, there was no challenge to the sufficiency of those claims below. There's also no question that if a pattern and practice of misclassification is established and the jury accepts it, a trial judge is fully empowered to order class-wide injunctive relief without any further proceedings. So I think those are the basic starting points. And this Court's finding, the lower Court's finding, that the defendant acted generally applicable to the class makes B-2 under those circumstances very valuable. And I would contest that even under an Allison analysis, the class was improperly denied under B-2. I think that, you know, looking at the B-2 analysis, and I'll mention Molsky, but granted your concern about the Court, I'll move past that as quickly as I can. Molsky says you look at the start of the case about what a reasonable plaintiff would have done. The start of the case, all the plaintiffs and, in fact, the majority of the class were current employees. You know, the Court cited some statistics which were at the time of class certification, which was a year and a half later. It doesn't take complicated math to look even under the Court's assumptions there, the kind of turnover in this company. The majority of the class was employed when this case was filed. But that isn't a determinative factor. The determinative factor is the plaintiffs and what the intention of the plaintiff is in light of the rule. Ginsburg. What is the degree of discretion in the district court? Molsky. Well, the court has broad discretion provided it applies correctly the law that's there. And I think that what the Court here is it made a number of errors in that analysis. The first one was the assumption that class could not be certified under B-2 where some portion of the class at some later date was no longer in a position to enjoy injunctive relief. That's a legal determination that that court made. It builds that assumption. And that's inconsistent with the language of the rule. It's also inconsistent with the advisory committee notes to that rule that adopted B-2. The advisory committee notes in 1966 said that action or inaction under B-2 is directed to a class even if it has taken effect or is threatened only as to a few members of the class, provided it is based on grounds of general application to the class. Is the policy concern in this case that the existing or remaining class representatives will not adequately represent the interests of all members of the class if only a small number will benefit? Well, that certainly is not the finding below. The lower court found that the class representatives were adequate representatives of the class. No, I understand that. But I'm just thinking, I mean, you raised the advisory committee note, and certainly one of the concerns that I'm sure the committee had in drafting the rule was to encourage certification of classes that would be effective for the entire class. Right. And obviously we have that concern with regard to who serves as class representatives. Well, I think if you look at the advisory committee note, I think what they're looking at are two things. The first thing that they're looking for is, is in fact a common policy being challenged. And I think there's a judicial efficiency concern here. Down below, the common policy applied to all members of the class, whether or not they still remain employed. And in fact, that's one of the reasons why a B-2 certification would be appropriate, even if some people are gone, because if there's a finding of a pattern in practice, that's going to inure to the benefit of all class members that are there. Now, the B-2 language doesn't turn on the adequacy of representation, but it turns on the fact that there is a common policy that is challenged. I think that's the important part. Now, the Court went further, though, and said, okay, turnover by itself was a sufficient reason to deny class treatment here. And I think there's some very perilous problems with that analysis. The Court did a head count, basically, as of the time of class certification, not as of the time the case was filed, and said, well, 1,200 members of the class admittedly are still employed, but a significant number of others are no longer employed, and sort of weighed it and said, well, the majority of the class is no longer employed. Well, there's several problems with that analysis. The first, of course, is that's sort of an incomplete fraction that's there, because if you're going to do a head count, you have to look at the people who will be employed in the future, who will enjoy injunctive relief. And as this Court has said in Walters v. Reno and other cases, future class members are just as important. That's what the ANCAM case, the U.S. Supreme Court, said. You can't just cut it off on the day you filed it. But the turnover analysis has some very pernicious effects. Basically, if you're going to allow turnover to be the determinant, you're saying that the worst employers, the ones who probably will have the most turnover, should be least amenable to class treatment. You're also saying to a defendant, delay class certification as long as you can, because by the time we get there, a lot of the class will be gone. And this is not hypothetical. We know that in the retail industry, the turnover rate is over 50 percent a year. Some companies, it's substantially higher. This is not some anomalous situation. We have a situation where turnover is a regular fact of life. So I think the Court had it wrong on both or on several counts on the turnover analysis. The Court also seemed to assume that B-2 certification required some kind of a showing that all members of the class were likely injured or can establish that they would enjoy injunctive relief. You know, the Court talked about some variation among class members. There are several problems with that. First of all, under the pattern and practice theory, which comes from the Teamsters v. U.S. case, there's no obligation to prove that all class members suffered damage. You have to show that the misclassification or the bad conduct was the common policy, even though there may be exceptions to it. Furthermore, this Court in Walters v. Reno specifically said that B-2 certification is appropriate even if some class members have not been injured by the challenge practice. It's not the test of whether it should be, too. I thought it was very interesting that the lower court in footnote 15 of its opinion essentially found that defendant had all but admitted that this is a policy that applied and hurt some class members. She said defendant may have essentially conceded that some of the assistant managers or AMs were likely misclassified. The wrong that's being challenged here and why B-2 makes sense and injunctive relief makes sense is the argument that the defendant made an across-the-board classification decision without any analysis. Defendants say, well, in a class certification decision, we look at the prima facie case and the affirmative defenses. But it's important under California law that it's an employer's burden, an employer's burden to conduct that kind of analysis and justify a classification decision. Here, this employer did not do that. If the Court finds after a trial that there is a pattern of misclassification, it would be fully empowered to order injunctive relief that required an appropriate analysis, that required that the classification decision not be this across-the-board kind of decision. The second issue I want to get to is the complexity of damage argument, which you also raised, as the second ground for denying B-2. Our cases and, in fact, even the Allison cases have never held that mere complexity of damages when you're talking about back pay undermines B-2 status. In fact, Monumental Life, which followed Allison, specifically said that B-2 does not include a sweat-of-the-brow exception. Basically, if you're talking about objective economic damages, where injunctive relief is there, obviously, that B-2 is still appropriate. And if you look at the history of Title VII, for example, there are cases replete, B-2 certification cases, where the damage proceedings are complicated, protracted, require teamsters hearings. None of those things have ever been held by undermining. But as I understand it, the district court's concern was that with some, what is it, 2,800, 3,000 class members, where if they were misclassified, then they would be entitled to overtime, it would require an individual-by-individual assessment of how many hours they worked, what they did, and I don't know what the state of the discovery is, if there has been any on this issue, but I'm guessing that the records are probably not going to be very complete, other than perhaps knowing what time they came in in the morning and what time they went home at the end of the day. Well, in fact, there's been no damages discovery yet. The finding of the court about complexity of damages is done at a time when the plaintiffs have not even been able to do any damage. But is that what was animating the district court's concern, that there would be, you know, significant monetary damages if the misclassification had occurred? I am sure the district court was concerned with that. And I think you have to look at in what context. Under B-2, the fact that there may be required, after injunctive relief is issued, individual proceedings, even extensive and complex ones, have not been held as a basis of the non-B-2 certification. In fact, in Title VII after Teamsters and Cooper v. Federal Reserve, it is the norm to expect individualized proceedings, which could be quite protracted. What's important, though, is on the first part of the trial, where common issues are going to predominate clearly, at the end of the first part of the trial, before any individual proceedings, if a pattern of practice is found, the court can issue class-wide injunctive relief. And that's the animating analysis why under B-2, no matter how complicated the back pay analysis, you're okay. Now, the defective court's concern about lots of individual issues, to be sure, are a different matter when you talk about Rule 23b-3, where you have a requirement of what I call super commonality, that common issues predominate. We think that she, trial judge, got it wrong there, but I'll be the first to concede that I think the B-2 argument is a much more compelling reason to go forward. Okay. Let me just go to the last issue before I sit down and reserve the rest of my time, is partial certification. I think it's very important that the trial court, after finding that there were common issues that were uniform, that is, whether something should be classified exempt or not, whether or not somebody's established a prima facie case, whether or not there are uniform job descriptions and training and the like. After finding that, the court nevertheless refused to do C-4 special issue certification because it found there'd still be individual issues left over. I think that's the wrong analysis. The question is whether the issues isolated for C-4 are common issues, not whether there remain some other issues down the line. I think the other part of it is the court did not appreciate how valuable a C-4 determination could be. Right now, an individual without a class case, whether he goes to the labor commissioner or he goes to trial court, against the largest corporation in the world, has to prove his case from the bottom up. He has to get a lawyer to represent him, even if he only worked there for six months or a year and didn't have very much damages. If the Federal court on a C-4 certification resolved a significant number of matters and I'll contest that how things are treated as exempt or not, whether or not there is a prima facie case are very significant matters, that would streamline those proceedings.  Thank you. May it please the Court. My name is Larry DiNardo, and I represent the aptly Walmart in this matter. The underlying assumption behind B-2 certifications is cohesiveness and homogeneity across a class. That's the fundamental concept that supports B-2 certifications. Where that doesn't exist, the application of B-2 is inappropriate. You need, under the language of B-2, some challenged action by the person resisting class certification that has some uniform impact or effect on the class so that you can, if appropriate, enter injunctive relief remedying that uniform impact. That's the concept behind B-2. That's what was missing here. The plaintiffs, they attack the adoption of exempt status, but they do not attack the application across the board of exempt status. Okay. The precise element, the reason that uniformity can't be achieved is why? Because, Your Honor, the Court correctly found that on its face, the written policies defining the job of assistant manager, on the face of the language of it, it's likely exempt, and that to determine if it had any unlawful impact on class members requires an analysis class member by class member. It may be illegal in some cases. The Court said certainly not illegal in others, and very well may be legal in most. So it's not, if you will, a rule like a diploma rule. You must have a diploma to apply for a position as janitor, where it has the same impact on the rejected class, or a weightlifting rule or height or weight rule, where if the rule is unlawful, injunctive relief applied across the board is the appropriate remedying action. Didn't the district court here use the wrong test in determining whether injunctive or declaratory relief predominated over the many damages sought? Did the trial court here, Your Honor? It was the wrong standard, didn't it? No. It's not to that incidental, and it cited the Elkins case. The Court, I believe, started out by saying the Ninth Circuit follows the rule of Molsky, which is not a bright-line rule, which, in fact, is a rule that says, what do we do? We look at the precise language first of B-2, and then we make a determination. No. She does start off there, but when she's making her decision and relying on the fact that fewer than half of the punitive class members could benefit from the injunctive relief sought, which is not, after Duke, something permissible to rely upon, then she says these factors suggest that damages are not incidental, a test that it does not apply in the Ninth Circuit. She clearly, Your Honor, uses the term incidental, but not in the impermissible in this circuit sense, but in the sense of primary versus secondary, which has – How do you know how she's using the term incidental? Well, we know that because she said the question here is predominance. The question in the Ninth Circuit is what's predominant versus secondary. The issue in the Ninth Circuit is the Molsky issue. We have rejected the Sitco petroleum allicin test. The Ninth Circuit, in its own post-Molsky jurisprudence, has from time to time mistakenly referred to incidental, but not in the sense of a tag-along to injunctive relief, which is the Fifth Circuit rule, but rather in the sense of primary or secondary. The other way we know, Your Honor, is she doesn't actually just go to how many class members could benefit from injunctive relief. She first recites in pretty good detail what the plaintiffs are after in the case, lost overtime wages, lost wages for meals and rest breaks, penalties associated with lost overtime. It's in the immediate paragraph before the paragraph the court just referenced. Penalties, a variety of penalties. Then the court does a logical thing, which, by the way, I think is quite consistent with Dukes II, with the panel decision in Dukes II, and it says, well, let's see who could benefit. So first of all, let's see what they ask for. They ask for a host of money damages. Then let's see who can benefit. And I think quite correctly said, majority of the class can't benefit. If she doesn't examine the intent of the class in bringing the suit, they may, just as in Dukes, very well, their predominant intent, which she doesn't examine at all, could be to stop and unlawful labor practice at Walmart, which is, you know, to misclassify non-exempt employees as exempt based on, what did we call it, idealistic job descriptions. Well, I don't think she entirely ignores the expressed intent, Your Honor. She does refer to the affidavit of Sepulveda, one of the plaintiffs, and she says, notwithstanding his explanation that he seeks to change matters at Walmart, I find that the enumeration of all the claimed money damages and the fact that so many people cannot benefit, in my analysis of the factors, the Molsky factors, I come out on the side that it certainly appears as if money damages predominate. She makes that judgment after enumerating all of those. Now, she then goes on to a discussion of ---- of individuals who could not benefit from injunctive relief, and we still held that Rule 23b-2 certification was appropriate. Well, actually, Your Honor, in Dukes 2, just the January decision, a panel of this Court said, as to those former employees ---- You're calling the amended opinion Dukes 2? Well, I won't do that because that will confuse everyone. So the Dukes January 08 opinion, in fact, says B-2 doesn't work for the formers. So let's send this back to the district court and figure out what do we do with B-2 where you have former employees who cannot be the beneficiaries of a B-2 injunctive relief. So as a matter of fact, that's one of the substantial changes, Your Honor. There is something you could do here in this case as well, right? You could. And again, the Court's obligation under B-2 is to figure out, is broad-based injunctive relief a solution to the claimed harm? If it's not, you need to find ---- Tell me why it isn't in this case. I'm sorry? Tell me why it isn't in this case. Sure. Well, in this particular case, the plaintiffs don't say that the job classification is on its face, non-exempt, or that there is an intent here to misclassify people. What they say is they, in fact, some group of the plaintiffs, are doing something different than the policies as described. They're distancing themselves from the policies. Their affidavits say they don't do that. What the Court found was to figure out whether or not the substantive law has been violated here or not, where you have someone not saying the diploma rule is unlawful, et cetera, but saying, ignore the rule for a moment, look at how I conduct myself. It's unlawful not to pay me overtime. That takes you out of B-2. No injunction can solve that problem, Your Honor. Injunctive relief here will ---- And by the way, the Teamsters case, just so it's clear, was not a B-2 case. The government brought that case, so there was no Rule 23 issues. And what the Teamsters case said was we can determine if there's a pattern of practice. That will create a presumption in Stage 2, not a finding of liability, a presumption that people's rights have been violated. This is a big employer. Yes, Your Honor. These are big. You're probably getting paid big bucks. And these are ---- We shouldn't assume that. These are large. We won't assume that. But these are large groups of employees who are performing jobs. So it's not as if there aren't days so that you can ---- we frequently permit class actions to go forward with subclassifications so that you can determine people doing this kind of thing are being misclassified or this kind of thing are not. We can do that. The district court can do that. And the district court said, you know, if this was a job that was more constrained in terms of variability, if this was a job where there were fewer issues regarding exempt versus non-exempt, if this were, and the court didn't say this, but if this were the job of a 777 pilot where you have a rather constrained area in which you can operate, then perhaps B-2 classification works. But here the evidence in the record was the job itself actually encompasses a range of jobs. So there's assistant managers, and then there's the night assistant manager. There's the days. There's the front end. Well, how many different? No, but it got quite complicated, Your Honor, in terms then ---- That's your job, right, to make it really complicated? Yeah, right. I would like to make it simple. I would like to make it simple and focus the court's attention on the cohesiveness and homogeneity requirements, which is the basis of B-2. This was a B-3 class until the court said there's too many variables, and then belatedly there was an attempt to sort of turn this into a B-2 case. Now, this is the fundamental problem is you can't have remedial measures under B-2 that work. You're left with a class of 3,000 folks, Your Honor, many of whom are not employed anymore, but who all did different things. You're thrown into stage 2 proceedings where the court would have to analyze each of those, and the court said that's not appropriate under B-2. It doesn't mean you can't have a class. It means you can't have a B-2 class, and that's what the court concluded. Now, I'd also mention this Bates decision. This is the en banc of just a few weeks ago. Now, in the Bates decision, it seems to say, you know, one of the two class members had standing, if you will, at the beginning of the case because he was someone impacted negatively by the rule that was under attack. When it came time for class certification, he was then in a job where he didn't qualify anymore for the job. The court interestingly said, didn't definitively, but said that individual now may not have standing for injunctive relief under B-2, raising the specter that not only at the time of filing the formers can't be impacted by B-2 injunctive relief, but at the moment of certification, if you can't be impacted by injunctive relief, B-2 is not proper for you. You take that with the Dukes II, I did it again, with the new Dukes decision, sending back to the trial court the question of can you have B-2 class certification for formers, and I think it was well within Judge Fisher's authority to say, in this application of B-2, let's look elsewhere. So what's the result of that? All of these numerous employees all have to file individual actions against Walmart to improve it over and over? No, only those who believe, in fact, that they were misclassified. All of those who believe that I'm a salaried employee, I'm not misclassified, I don't have a claim, they don't have to bring suit, and I would assume would not. So what you've really done is say we can't have representative evidence to try to mask this broad group when there's such variation in the population, and that's all the trial court did. I'd like to just mention a bit about B-3. So before I leave B-2, though, I think the court's analysis may not have been precise and as thorough on B-2, but clearly the court followed Molsky, the court looked at the things that this court is looking at, the number of people that can be impacted, the kind of relief sought, and an expression of what the objective of the case is. But Molsky doesn't say you take the subjective declaration of the named plaintiff as to their objective, in large measure drafted by lawyers, and say that defines whether we have, whether the real objective is monetary versus injunctive. It's just a matter to be considered, and the court considered it here. The B-3 record. A wide variety of different tasks performed by persons covered by an apparently appropriate exempt job description. That's what the court said. With the plaintiff seeking to recover substantial monetary damages. The court had before it 100 or so declarations, which upon its own examination, the court concluded they don't accomplish what they attempt to accomplish. They apparently set out to show that they were misclassified, but all they showed was they're all doing different things, leaving me with the predominance and superiority problems inherent in B-3 when there's this kind of variability. And the wide variation not only depended on the individuals. The court found that the wide variation depends on where you're assigned. Is it a busy store? Is it a slow store? Is it a store with an experienced workforce or otherwise? Okay. Now we're getting complicated again. I'm sorry. Now, one comment that's in the briefs regarding the save more notion. If the court, if this court were somehow bound, of course, by the procedural determination of the California Supreme Court as to what's an appropriate class action and is interested in this save more analysis, it's important to note that what save more said was the trial court's in the best position to judge variability of issues, predominance, individual issues versus collective issues. What save more said was it seems that the issue of what the employer expects of the job and the requirements of the job, those are a couple of things that might be well suited to class determination. The save more court, though, also said that in terms of what the employees actually do, any dispute over how the employee actually spends his or her time has the potential to generate individual issues. That court then determined that those collective issues predominated the trial court. Intermediate court reversed. Supreme Court said there was a determination that the collective issues, fact issues, predominated that should have been left alone. But this court here looked at those same three factors. And in this case, what overwhelms the case is the individual facts relating to how the individuals spend their time. In terms of the employer's expectations and the requirements of the job, the court said those, it seems, could be dealt with on a collective basis, although then the court says, but there is also in the record, the defendant's point that some of those expectations change. Some of those requirements change depending on the context. So it was in that analysis that the court concluded B-3 was improper. And finally, in terms of B-4A, the court looked to this court's decision in Valentino and was driven by an analysis of judicial economy. And the court simply concluded that at the end of the day, I'm left with whatever can be dealt with collectively still leaves me to determine the individual application of the characterization of these employees as exempt. And we've advanced the ball none. The same conclusion that the court came to in Valentino. Again, in Valentino, the court rejected the notion of B-4A working. And the court here followed the Valentino analysis, focused on judicial economy, came to the conclusion that there was nothing to be gained. So in all three situations, B-2, the court followed Molsky, did the proper analysis. B-3, the court focused properly on the superiority, I'm sorry, on the predominance and superiority issues. And B-4A focused on judicial economy. To suggest that the court didn't follow the rules is really just to suggest that someone else should substitute the judgment for this trial court. Thank you very much. Thank you. Briefly, Your Honors. First of all, counsel refers to a standard of cohesiveness and homogeneity, which is not anywhere found in Rule 23B-2 or found in the advisory committee notes. It is clear that this district judge thought it was following the analysis standard. The citation to Elkins, I think it's interesting what Elkins said. Elkins cited the Allison incidental damages test. And Elkins, interestingly, was a case where the plaintiff sought emotional distress damages, subjective damages. It's a completely inopposite case to this one that's here. But even if we follow the Allison rule, and that's what I want to come back to, the findings made below and the claims made below would still have mandated certification. Where this court found 23A was established and the defendants acted on grounds generally applicable to the class. When one talks about homogeneity, there are two factors that establish it here. The fact that defendant acted towards the class as a whole by classifying in that way and not doing any analysis. And second, that injunctive relief is sought. Now defendants suggest that you need to do a class member by class member analysis. In fact, under the pattern and practice rule, which is in Teamsters and in the class action case, Cooper v. Federal Reserve Board, and every case thereafter, once the pattern is established, injunctive relief is issued without any individual determinations. So you don't need that. Now, of course, the court could decide at that point, based on the facts, that it does not, it should not continue with certification of the damages. It can revisit that later on. But it certainly doesn't need to revisit, to deny certification where an injunctive relief and pattern and practice claim is made. Now, I understand the court's concern about the Dukes decision. And I've got to tell you, I'm just as concerned being lead counsel in Dukes. But that doesn't turn this case, because I don't think you need to go anywhere on Dukes. Even the most recent version of Dukes, which defense counsel cited, doesn't say anything that undermines the findings in this case. And I think it's important that two weeks after Dukes, the en banc decision in Bates establishes some very fundamental things that are relevant here. As long as we have a single plaintiff withstanding, standing for the class is established. And we still have, even at the date of class certification, a plaintiff who remains an employee of Wal-Mart, Mr. Pranger. There's no question about that. I think the other fact is that there was no challenge to the standing of these plaintiffs below. And I think the recent decision that came out just last week in the Boeing case is where there's no challenge to the standing, the allegations of the complaint are sufficient to establish standing. Finally, there's no question that, at least as of the date of class certification, 1,200 class members had standing to seek injunctive relief. They were current employees, as did any plaintiffs that come subsequently. The final point I want to make is, given the findings that were made below, and again, I want to emphasize, you don't see this in most cases, the findings made below here. If you take away the improper basis for denying class certification, I think class certification is mandated. There's no need for a remand given the findings that were made by that court below. Thank you, Your Honor. Thank you. The matter just argued is submitted. The Court appreciates the quality of the arguments presented. We'll proceed to hear the last case on the calendar, which is Forti v. Sprint.
judges: Schroeder, Wardlaw, Tallman